FILED

2025 Jul-16  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MICHAEL CONRAD,

     *Plaintiff,*

vs.

HART CONSUMER PRODUCTS, INC.,

     *Defendant.*

Case No. 4:24-CV-307-CLM

## DEFENDANT HART CONSUMER PRODUCTS, INC.'S RESPONSE REGARDING THE IMPACT OF *MCLAUGHLIN*

Hart Consumer Products, Inc. ("Hart") submits this brief in response to the Court's Order. (Doc. 18). The Court denied without prejudice Hart's motion to dismiss and, "[b]ecause *McLaughlin* may be dispositive of this case," granted the parties' motion to stay pending the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, No. 23-1226, 2025 U.S. LEXIS 2385 (July 20, 2025). (Doc. 16). As the Court noted, "Hart is free to refile the motion [to dismiss] depending on the *McLaughlin* outcome." *Id.*

Before *McLaughlin*, Eleventh Circuit precedent construed the Hobbs Act to preclude district courts from second-guessing the FCC's interpretation of the TCPA. *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, C.J.). *McLaughlin* overruled that precedent: according to the Supreme Court, this

Court "can decide what [the TCPA] means under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation." 2025 U.S. LEXIS 2385, at *20. As a result, this Court is now free to determine whether the FCC's 2003 Order, which interpretively broadened eligibility for the TCPA's do-not-call registry beyond what Congress authorized, withstands "ordinary principles of statutory interpretation." *Id.* at *10. If it does not, as Hart previously explained in the motion to dismiss, then Conrad has no claim, and this case should be dismissed with prejudice. Accordingly, Hart respectfully requests leave to file a renewed motion to dismiss.

## <u>BACKGROUND</u>

**A.**     <u>Conrad claims that Hart sent unwanted text messages to his cellular telephone number.</u>

Hart allegedly sent various text messages to Conrad's cellular telephone number, not a landline number. (Doc. 1 at 2). Conrad claims that he received those text messages after he registered that number with the National Do-Not-Call Registry ("DNC Registry"). *Id.* at 1-2. Conrad asserts one count under the TCPA, 47 U.S.C. § 227(c)(5), on behalf of a nationwide class. *Id.* at 7-13.

**B.**     <u>By administrative fiat, the FCC expanded eligibility for the TCPA's DNC Registry to cover wireless telephone subscribers.</u>

In 1991, Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect ***residential telephone subscribers'*** privacy rights to

avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). As Congress acknowledged, the contemplated regulations "may require the establishment and operation of a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added). Consistent with that delegated authority, the FCC implemented 47 U.S.C. § 227(c)(3) as follows:

> A *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2) (emphasis added).

Unlike some state analogues, the federal enabling legislation addressed only "residential telephone subscribers," not wireless telephone subscribers. *See, e.g.*, Colo. Rev. Stat. § 6-1-905 ("The Colorado no-call list program is hereby created for the purpose of establishing a database to use when verifying *residential subscribers* and *wireless telephone service subscribers* in this state who have given notice … of such subscribers' objection to receiving telephone solicitations.") (emphasis added).

But, in 2003, the FCC attempted to plug the gap. The FCC broadened § 227(c)(3)—and, therefore, those eligible for the DNC Registry—to include wireless telephone subscribers. The FCC did so through an administrative order ("the 2003 Order"), in which it stated that the DNC Registry "should allow for the registration of wireless telephone numbers, and that such action will better further the objectives

3

of the TCPA . . . ." 18 FCC Rcd. 14014, at *59 (June 26, 2003). The FCC identified nothing textually supporting its position; instead, to the FCC, its approach "is more consistent with the ***overall intent*** of the TCPA." *Id.* at *63 (emphasis added).

**C.    Until recently, courts in the Eleventh Circuit were barred from second-guessing the FCC's interpretation of the TCPA, even when those interpretations were demonstrably wrong.**

Courts have expressed skepticism about the FCC's interpretive expansion of the DNC Registry to encompass wireless subscribers. *See, e.g.*, *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere. . . The Court, therefore, is not convinced that Congress and the FCC, through the TCPA and its regulations, intended to protect 'cellular telephone subscribers' along with 'residential telephone subscribers.'").

For example, in *Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*, 603 F. Supp. 3d 1334 (S.D. Fla. 2022), Judge Ruiz considered this exact issue. As the court explained, "[t]he TCPA clearly draws a distinction between cellular telephones and residential telephones." 603 F. Supp. 3d at 1340 (citing provisions of the TCPA). "Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of [the TCPA] would conclude that Congress intentionally omitted any

reference to cellular telephones in section 227(c)" (*i.e.*, the provision under which Conrad now sues). *Id.* Thus, "when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers." *Id.*

Until recently, the Hobbs Act precluded district courts in the Eleventh Circuit from engaging in that type of statutory analysis. Instead, courts were bound to follow FCC interpretations, including the 2003 Order, even if those interpretations were manifestly incorrect. *Turizo*, 603 F. Supp. 3d at 1341. Thus, "[d]espite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision," courts were required to find that "residential telephone subscriber" includes "wireless subscribers." *Id.* at 1342.

## DISCUSSION

The FCC's 2003 Order no longer impedes this Court from engaging in ordinary statutory analysis to determine whether the TCPA's reference to "residential subscribers" includes "wireless subscribers." For this reason, *McLaughlin* has a significant effect on this case, and further briefing—through a renewed motion to dismiss by Hart—would aid the Court in resolving this issue.

### A.    *McLaughlin* clarified that the Hobbs Act does not constrain this Court's power to interpret the TCPA.

*McLaughlin* arose from a posture identical to this case. One party claimed that the FCC's interpretation exceeded the FCC's delegated authority, but the district

court, bound by the Hobbs Act, was required to follow the FCC's interpretation, which had outcome determinative consequences. In particular, McKesson sent "unsolicited fax advertisements to various medical practices," and one of the recipients was McLaughlin. 2025 U.S. LEXIS 2385, at *7. McLaughlin—seeking to represent a class of others "who received unsolicited faxes through online fax services"—sued McKesson, claiming it violated the TCPA by "faxing unsolicited advertisements without the [required] opt-out notice." *Id.* at *7-8.

While the lawsuit was pending, the FCC issued an order "interpreting the term 'telephone facsimile machine' in the TCPA." *Id.* at *8. According to the FCC, "an online fax service is not a 'telephone facsimile machine,'" and by extension, "the TCPA would not prohibit faxes received through online fax services." *Id.* The district court determined that, under the Hobbs Act, the FCC's interpretation is binding and granted summary judgment in McKesson's favor (as McLaughlin had targeted only the receipt of messages through "online fax services"). *Id.* at *9. On appeal, the Ninth Circuit "agree[d] that [the district court] was 'bound' by the [FCC's] order." *Id.*

The Supreme Court granted certiorari and reversed. *Id.* According to the Supreme Court, "[u]nlike the Clean Water Act, CERCLA, and the Clean Air Act, the Hobbs Act does not expressly preclude review in enforcement proceedings," including civil litigation between private litigants. *Id.* at *16-17. Thus, "the Hobbs Act does not bar McLaughlin from arguing in the district court enforcement

proceeding that the FCC's interpretation of the TCPA is incorrect." *Id.* at *19-20. The district court "can decide what the statute means under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation." *Id.* at *20. The Hobbs Act, therefore, embraces administrative law's "default rule," as articulated by the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Id.* at *13.

**B.**   ***Loper   Bright*** **replaced   administrative   deference   with   judicial independence.**

Without the Hobbs Act as an impediment, this Court must follow the framework articulated in *Loper Bright*, which overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

**First,** Conrad suggests that, without *Chevron* deference, this Court defaults to *Skidmore* review. Not so: "[t]he Supreme Court's recent decision in [*Loper Bright*] overruling *Chevron* deference did not disturb" *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), but "***clarified the areas*** in which *Skidmore* has tended to serve an interpretive function." *Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1265 (11th Cir. 2025) (emphasis added). Those "areas" are narrow: if (i) a statute "empower[s] an agency to decide how a broad statutory term applie[s] to specific facts found by the agency," (ii) "an agency makes a factbound determination about the meaning of a statutory term," (iii) "Congress gives an agency the power to fill up the details of a statutory scheme," (iv) "an agency's specialized experience and informed judgment

work to lend persuasive power to its interpretations," or (v) "the term itself leaves the agency with flexibility." *Id.* (citations omitted). The FCC's 2003 Order meets none of those conditions. Whether a "wireless subscriber" is as a "residential subscriber" is a pure question of law. Therefore, *Skidmore* provides no reason why this Court must afford any respect to the FCC's interpretation.

**<u>Second,</u>** even if *Skidmore* review applies, that framework has meaningful limits. For starters, even before *Loper Bright*, "an agency's interpretation is not entitled to controlling weight under *Skidmore* deference." *Rafferty v. Denny's, Inc.*, 12 F.4th 1166, 1179 (11th Cir. 2021). Instead, "agency interpretations are only given a level of respect commensurate with their persuasiveness." *Nicoletti v. Bayles*, No. 24-6012, 2025 U.S. App. LEXIS 661, at *4 (4th Cir. Jan. 13, 2025) (quotation omitted). If "the matter before [a court] presents ***a pure, narrow question of law***," then that question is "prime for judicial resolution using interpretive tools to resolve ambiguity," not agency deference. *Turner*, 130 F.4th at 1265 (emphasis added).

Because *Skidmore* does not require judicial deference to agency interpretation, "the term '*Skidmore* deference' is, strictly speaking, a misnomer." *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1135 (6th Cir. 2025) (Nalbandian, J., concurring). *Skidmore* "just directs courts reviewing agency action to consider the agency's views with respect, insofar as they are well-reasoned, consistent over time, and informed by the agency's expertise." *Id.* (citing *Skidmore*, 323 U.S. at 139-40). By extension,

*Skidmore* "recognizes that agencies have the 'power to persuade,' not the power to bind," and the doctrine would be "more accurately describe[d]" as "*Skidmore* respect, not *Skidmore* deference." *Id.*

**C.    Post-*Loper Bright*, the Eleventh Circuit has demonstrated how to interpret the TCPA.**

After *Loper Bright*, courts must "exercise [their] independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412. The Eleventh Circuit has considered how *Loper Bright* frames a court's interpretation of the TCPA. In *Insurance Marketing Coalition Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025), the Eleventh Circuit analyzed whether the FCC's "sweeping rule" comported with the TCPA's actual text. At issue was the TCPA's requirement of "prior express consent," which the FCC construed to mean "two different things," depending on the circumstance. 127 F.4th at 307. The petitioner contended that the FCC's rule "conflict[ed] with the ordinary statutory meaning of 'prior express consent'" and, therefore, exceeded the FCC's authority. *Id.* at 307-08.

The Eleventh Circuit concluded that the FCC "exceeded its statutory authority" because the rule "impermissibly conflict[ed] with the ordinary statutory meaning of 'prior express consent.'" *Id.* at 308. Although the Eleventh Circuit did not have to grapple with the Hobbs Act (the case was a direct appeal from the FCC), it did have to consider whether and to what extent agency deference was due. The Eleventh Circuit noted that, under *Loper Bright*, "the scope of an agency's statutory

authority and whether an agency has acted within that authority are legal questions [that courts] decide independently." *Id.* at 311 (citing *Loper Bright*, 603 U.S. at 391-92 n.4). And, in deciding whether the rule adhered to the statute's text, "[s]tatutory interpretation begins and ends with the text," not an agency's interpretation of it. *Id.* at 313. That is so even if the FCC's preferred approach constitutes "good policy" because "[a]textual good policy cannot overcome clear text." *Id.* at 315 (citations omitted). When "the TCPA's text is clear," the FCC "has no authority to dictate otherwise." *Id.* Accordingly, the FCC's "authority to 'implement' the TCPA gives it no authority" to "alter the specific choices Congress made." *Id.* at 316 (quoting *Nat'l Ass'n of Broads v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022)).

## CONCLUSION

*Insurance Marketing* illustrates how this Court should interpret the TCPA. The Eleventh Circuit interpreted the TCPA through the lens of "the text," not whether an interpretation promoted "good policy," and gave no deference to the FCC's "atextual" interpretation. In the same way, the 2003 Order is entitled to no deference because there is no textual basis for it. Because (i) *McLaughlin* eliminated the key barrier to this Court's interpretation of the TCPA and (ii) there are compelling reasons why the 2003 Order exceeds the TCPA, Hart respectfully requests that the Court permit leave to file a renewed motion to dismiss. (Doc. 16).

Respectfully submitted this 16th day of July 2025,

/s/ Wesley B. Gilchrist
Wesley B. Gilchrist (asb-4083-e43g)
*wgilchrist@lightfootlaw.com*
Christopher C. Yearout (asb-8053-s82y)
*cyearout@lightfootlaw.com*
Nick Langford (asb-9266-z20r)
*nlangford@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, AL  35203
(205) 581-0700

**Counsel for Defendant Hart
Consumer Products Inc.**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on July 16th, 2025, a true and correct copy of

the foregoing was filed with the Clerk of the Court by using the CM/ECF system,

which will send a notice of electronic filing to all counsel of record.

J. Matthew Stephens, Esq.
METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
205-939-0199
mstephens@mtattorneys.com

Anthony I. Paronich, Esq. (pro hac vice)
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

***Counsel for Plaintiff***

/s/ Wesley B. Gilchrist
OF COUNSEL