FILED
2025 Jul-16 PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

MICHAEL CONRAD, on behalf of himself and others similarly situated,

    Plaintiff,

v.

HART CONSUMER PRODUCTS, INC.

    Defendant.

Case No. 4:24-cv-307

## PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING *MCLAUGHLIN*

**Introduction**

Last month, the Supreme Court rendered its decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), where the Supreme Court held that, in interpreting the TCPA, courts are called upon to "independently determine the law's meaning under ordinary principles of statutory interpretation while affording appropriate respect to the agency's interpretation." In response, this Court issued an order directing the parties to file supplemental briefing explaining the impact of *McLaughlin* on this case. For the reasons that follow, the Supreme Court's decision should not change the fact that the Defendant's motion should be denied based upon a robust, textual interpretation of the statute already conducted by the Plaintiff in his opposition to the Defendant's Motion to Dismiss, which makes clear that cell phones are "residential" telephones protected by the TCPA.

A denial of the Defendant's motion is further supported by the "appropriate respect" that this Court ought to give the FCC's interpretation that cellular telephone numbers are subject to the Do Not Call Registry provisions of the TCPA. Indeed, the only Court to consider the same motion to dismiss following *McLaughlin* has held the cellular telephones can be residential lines. *See Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA. That 17-page decision denying a substantially similar motion to dismiss is attached as <u>Exhibit 1</u>.

Finally, because *McLaughlin* empowers this Court to conduct its own independent analysis, there is no need to certify the issues for interlocutory review.

## Analysis

"The TCPA protects businesses and consumers from intrusive telemarketing communications." *McLaughlin*, 145 S. Ct. at 2011. Section 227(c) of the TCPA gave the FCC broad authority to "evaluate alternative methods and procedures" including "'do not call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to promulgate rules and regulations to implement that protection. 47 U.S.C. § 227(c)(1)(A)–(E). At issue here, the regulations the FCC promulgated under the TCPA, which are not subject to *McLaughlin* review or the Hobbs Act, as such regulations are "legislative rules" that have the "force and effect of law," *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 7 (2019), prohibit "initiating any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). The term "telephone solicitation" "means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(15). However, the term "residential telephone subscriber" is *not* defined.

The question, then, that this Court is asked to answer under *McLaughlin* is this: are cell phones a type of phone used by "residential telephone" subscribers protected by the TCPA? Helpfully, the FCC has held, since 2003, in an interpretative ruling it issued on the subject, not only that cell phone subscribers are residential telephone subscribers, but that they are *presumptively* residential. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'"). Prior to *McLaughlin*, one line of reasoning held that, under the Hobbs Act, the FCC's interpretation of its legislative rule was binding, absent a contrary holding as a result of a challenge in the circuit courts of appeal.

All *McLaughlin* means is that this Court is not *bound* by the FCC's interpretation that the term "residential telephone" also includes cell phone subscribers. *McLaughlin*, 145 S. Ct. at 2015. *McLaughlin* does not alter the fundamental analysis that either this Court or the Circuit Court is called upon to conduct, using "ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* Although Defendant will urge this court to "disregard" the FCC's 2003 order, *McLaughlin*, 145 S. Ct. at 2024, the Supreme Court's decision simply mandates that this Court conduct its own independent analysis. And using the textual framework the Plaintiff outlined

3

in his opposition to the Defendant's motion, this Court should have no trouble concluding, as did the FCC, that the term "residential telephone subscriber" in the TCPA also includes subscribers to cellular telephone services, which is unbound to the type of technology a consumer uses. Indeed, as another Court held while denying a motion to stay a case pending *Mclaughlin*, "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025).

Although this Court is not bound by the FCC interpretation, that doesn't matter for the purposes of the case here, as simple grammar counsels that the Plaintiff's interpretation is the correct result. "It is well settled that the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987). As the Plaintiff points out, applying well-established principals of statutory interpretation makes it clear that "residential" is an adjective modifying "telephone subscribers." Framed negatively, the TCPA prohibits business subscribers, that is, businesses who subscribe to business telephone services, from registering their numbers on the Registry. It does *not* prohibit residential subscribers, that is, individuals who subscribe to residential telephone services, such as residential cell phone plans and residential fixed voice services, from registering. This conclusion is further

4

bolstered by the title of Section 227(c) itself, which addresses not the type of *technology* used by the subscriber, but rather *subscribers themselves*. 47 U.S.C. § 227(c) ("Protection of subscriber privacy rights"). Indeed, the rest of the Section 227(c) granted the FCC broad authority "to evaluate alternative methods and procedures" "to protect residential telephone subscribers' privacy rights." It said nothing about regulating or limiting those protections to the type of technologies the residential subscriber chose to use. Nor does Section 227(c) of the applicable regulation address "landlines;" or "residential telephone *line*;" to the contrary, it references a "residential telephone *subscriber*." 47 C.F.R. § 64.1200(c)(2).

And further applying the independent statutory analysis that *McLaughlin* mandates this Court to conduct, as more fully explained in Plaintiff's brief, the Defendant's interpretation conflicts with the plain language of the statute. As Plaintiff points out, Defendant argues that the phrase "residential telephone subscriber" means residential *landlines*, but Defendant's interpretation does not conform with the ordinary, contemporary, and common meaning of "residential telephone subscriber," as outlined in both dictionaries to which the Plaintiff references. In 1991, when the TCPA was enacted, a subscriber was defined as one who "agree[s] to receive a periodical or service regularly[]." Subscribe/Subscriber, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989). So, the ordinary, and common meaning of a "telephone subscriber" at the time the statute was

5

adopted is an individual who makes regular payments to use telephone service on an ongoing basis. So, "residential telephone subscriber," refers to individuals, subscribers, who make regular payments to use telephone service at home, that is, people who use a telephone for a personal or private purpose-a use traditionally tied to the home-as opposed to a commercial or business use. Simply put, applying a well-grounded analysis of the statute's text, as *McLaughlin* counsels, warrants denial of the Defendant's motion.

Giving due regard to the agency's interpretation, as urged by *McLaughlin*, further shows that the FCC got it right. Although this Court is not bound by the FCC's interpretation that a cell phone subscriber is presumptively a residential telephone subscriber, the Court must "afford[] appropriate respect to the agency's interpretation." *McLaughlin*, 145 S. Ct. at 2015 (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)). As *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." 603 U.S. at 370. The FCC found that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phone[,]" *In Re Rules*, 18 F.C.C. Rcd. at 14038, and that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service[,]" *id.* at 14039.

The FCC further concluded that such a holding was in line with Congressional intent, which was to provide significant protections under the TPCA to wireless subscribers. Indeed, it would be peculiar that Congress would extend *enhanced* protections to wireless subscribers, such as by prohibiting sending pre-recorded calls to such subscribers, while at the same time denying those same subscribers the protections afforded by permitting them to place their numbers on the Do Not Call Registry, for it "is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). To this end, the do-not-call provision's stated aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Courts have long recognized the importance of residential privacy interests on a same footing as other Constitutional interests. *See, e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). Those interests do not change merely because technology has changed: as with the First Amendment, freedom of the press applies just as concretely to internet publications as the printed word; residential privacy applies just as concretely to copper landlines as the latest 5G smartphones. "[P]rivacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP,

2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). As such, a contrary interpretation that fails to give due regard to the FCC's interpretation is one that not only fails to give due regard to the agency's interpretation but also the "fairly discernable" intent of the statute. *McLaughlin*, 145 S. Ct. at 2016 n.4. Disregarding the FCC's interpretation, as the Defendant will undoubtedly urge, will simply lead to absurd results that are the antithesis of a rigorous independent analysis.

Indeed, the first decision that relies on the Supreme Court's decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al. was entered on Friday, June 27, 2025, *Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA. The 17-page decision denying a substantially similar motion to dismiss is attached as <u>Exhibit 1</u>. In that decision, Judge Aiken summarized:

> The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests. *See*, *e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home . . . and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.") (cleaned up); *see also* S. Rep. No. 102–178, at 4 ("The Supreme Court also has recognized that 'in the privacy of the home, . . . the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.'") (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But

"[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests that Congress specifically sought to protect yields an absurd result.

Finally, under *Loper Bright*, when Congress expressly empowers an agency to decide how to apply a statutory term to specific facts found by the agency, the agency interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. Here, Congress, in Section 227(c), broadly authorized the FCC to fact-find within the scope of its expertise and to "evaluate alternative methods and procedures," including "'do-not-call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E). Accordingly, the FCC determined, based on its findings, that to give proper meaning to the statutory text and to effect Congress's aim, cell phone users are presumptive residential telephone subscribers who may take part in the Do Not Call Registry. That interpretation is due special deference under *Loper Bright*. And, even without the special "deferential review" described in *Loper Bright*, the Court gives great weight, under *Skidmore* deference, to the FCC's interpretation because it was based on factual findings within the FCC's expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements.

In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).

As reflected in the Plaintiff's underlying motion, this Court should hold the same.

Finally, the Defendant's motion seeks certification of the aforementioned issue to the Eleventh Circuit Court of Appeals in accordance with the Hobbs Act's review provisions. However, Plaintiff respectfully submits that this request has been mooted by *McLaughlin*, as *McLaughlin* empowers this Court to conduct the same analysis of the statutory text that Defendant argued the Court of Appeals was empowered and at the time arguably required to conduct. As the Plaintiff himself noted in the opposition, the likely outcome would be to "leav[e] the Court to conduct its own statutory analysis, which should result in the identical conclusion anyway." There is no need to certify an interlocutory appeal now that the Court can conduct its analysis of the statute, an analysis that should result in denial of the Defendant's motion.

**Conclusion**

Without being bound by the FCC, and in line with *McLaughlin*, this Court can independently conclude that the FCC got it right on multiple levels: as a statutory matter, as a matter of due regard to the FCC's own analysis, and in a manner than harmoniously and ordinarily interprets the statute in a manner consistent with its stated intent. An independent textual analysis of the provision warrants denial of the Defendant's motion.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: July 16, 2025 | */s/ Anthony I. Paronich*<br>Anthony I. Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>(508) 221-1510<br>anthony@paronichlaw.com<br><br>*Attorneys for Plaintiff and the putative Class* |